Presstek v. Agfa Gevaert          CV-95-220-M    01/26/96
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Presstek, Inc.,
      Plaintiff,

      v.                                          Civil No. 95-220-M

Agfa Gevaert, N.V.,
      Defendant.


                               O R D E R


      Invoking the Federal Arbitration Act, 9 U.S.C. § 3,

defendant AGFA-GEVAERT, N.V. ("Agfa"), moves to stay all

proceedings in this case pending arbitration of the parties'

dispute before the International Chamber of Commerce.  Plaintiff,

Presstek, Inc. ("Presstek") objects.


      The parties entered into two relevant agreements, a

"Confidentiality Agreement" in 1989, and a "Manufacturing

Agreement" in 1991.  Presstek brought this suit alleging that

Agfa breached its obligations under the Confidentiality Agreement

relative to confidential information Presstek provided to Agfa

before the parties entered into the Manufacturing Agreement.

The present dispute stems from the fact that the Manufacturing Agreement contains an arbitration clause, while the Confidentiality Agreement does not. Presstek asserts that its claims against Agfa arise out of (and are governed exclusively by) the Confidentiality Agreement and, therefore, are not subject to arbitration. Agfa disagrees.

The threshhold question presented by the parties is whether the court or an arbitrator should determine the proper scope of the arbitration agreement (i.e., did the parties intend it to apply to disputes relating to the Confidentiality Agreement). For the reasons set forth below, the court holds that the parties have agreed to submit all questions concerning the arbitrability of disputes relating to their business relationship to an arbitrator. Accordingly, Agfa's motion to stay this case pending arbitration is granted.

**Discussion**

Paragraph 1 of the Manufacturing Agreement is entitled "Prior Agreements" and provides:

> This Manufacturing Agreement, when executed by both parties, supersedes and replaces the Memorandum of Understanding. The

2

> Confidentiality Agreement shall remain in full force and effect and shall continue to apply to disclosures prior to the effective date of this Agreement and to disclosures made pursuant to this Agreement, and a copy thereof is attached hereto as Exhibit 1.

Paragraph 17 of the Manufacturing Agreement describes the "entire agreement" between the parties, in part, as follows:

> This Agreement <u>and the Confidentiality Agreement</u>, represent the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior negotiations, representations, and agreements made by and between the parties. (emphasis added).

The arbitration clause contained in the Manufacturing Agreement provides that "[d]isputes arising out of or in connection with the interpretation and application of <u>this Agreement</u>" shall be resolved by binding arbitration, conducted pursuant to the rules of the International Chamber of Commerce. Manufacturing Agreement, para. 22 (emphasis added). The parties disagree as to the effect of the referenced language. Presstek asserts that disputes related to breaches of the Confidentiality Agreement that <u>antedate</u> the Manufacturing Agreement neither "arise out of" nor are "connected with" the Manufacturing Agreement. And, because the Confidentiality Agreement stands

3

alone, relates to distinct matters, and contains no arbitration clause, Presstek says no agreement to arbitrate such disputes ever existed.

Agfa, on the other hand, argues that the Manufacturing Agreement redefined the business relationship between the parties, reaffirmed and continued the protections provided in the Confidentiality Agreement, and memorialized the parties' express agreement to arbitrate all matters relating to the "entire agreement" between them (which, as noted above, is defined to include the Confidentiality Agreement and the Manufacturing Agreement). Accordingly, it claims that alleged breaches of the Confidentiality Agreement are necessarily included within the scope of the arbitration agreement.

The arbitration clause found in the Manufacturing Agreement is reasonably broad and reasonably clear. The parties unquestionably agreed, at a minimum, to submit disputes "in connection with the interpretation and application of this Agreement" to International Chamber of Commerce for arbitration. Manufacturing Agreement, para. 22. Whether the reference to "this Agreement" in the arbitration clause was intended to mean

4

"the entire agreement" as defined in paragraph 17 (to include both the Confidentiality Agreement <u>and</u> the Manufacturing Agreement) depends ultimately on the intent of the parties.[1]

At this juncture, however, the court need not resolve whether the parties intended the arbitration clause of the Manufacturing Agreement to be construed broadly (as Agfa asserts) or narrowly (as Presstek asserts). As noted above, the threshhold question is who decides what the parties intended -- the court or an arbitrator? The court resolves that issue in favor of permitting the arbitrator to determine the parties' intent and the appropriate scope of the arbitration clause.

This case presents a classic situation in which there is disagreement as to whether a reasonably clear and reasonably broad arbitration clause does or does not cover particular

---

[1] The terms of the Manufacturing Agreement certainly lend themselves to a reasonable construction in favor of arbitrability of <u>all</u> disputes related to the business relationship described in the Manufacturing Agreement. Nevertheless, Presstek's assertion that the parties always consciously intended to carve out Confidentiality Agreement disputes from the arbitration clause's reach may be valid. At a minimum, it raises a factual dispute regarding the parties' intent (and raises the question as to why sophisticated commercial entities would not have simply and explicitly excluded the Confidentiality Agreement from the arbitration clause if that was their intent).

disputes. That disagreement is itself arbitrable in the first instance, because there is undeniably a valid preexisting agreement to arbitrate disputes arising between these parties and related to the Manufacturing Agreement. Once such an agreement is shown, "if the contract language chosen by the parties is unclear as to the nature of the claims to which an agreement to arbitrate extends, a `healthy regard' for the federal policy favoring arbitration requires that `any doubts concerning the scope of an arbitrable issue be resolved in favor of arbitration.'" McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994) (citations omitted).

In light of the clear policy favoring arbitration and the parties' unambiguous and enforceable agreement to arbitrate disputes (at least those "arising out of or in connection with" the Manufacturing Agreement), the court finds that the issue concerning the scope of the arbitration agreement is properly resolved by an arbitrator.[2]

---

[2] The court's decision is further supported by Article 8 of the International Chamber of Commerce rules of arbitration, which provides, in part:

> Should one of the parties raise one or more pleas
> concerning the existence or validity of the agreement
> to arbitrate, and should the Court be satisfied of the

## Conclusion

All proceedings in this case are hereby stayed under the Federal Arbitration Act pending arbitration of the proper interpretation and scope of the Manufacturing Agreement's arbitration clause and, if appropriate, arbitration of the merits of the disputes between the parties.  Defendant's motion to stay (document no. 11) is granted.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

January 26, 1996

cc:   George R. Moore, Esq.
      Daniel S. Ebenstein, Esq.
      Steven J. Frank, Esq.
      Theodore A. Breiner, Esq.
      Garry R. Lane, Esq.
      A. Hugh Scott, Esq.

_____

prima facie existence of such an agreement, the Court may, without prejudice to the admissibility or merits of the plea or pleas, decide that the arbitration shall proceed.  In such a case any decision as to the arbitrator's jurisdiction shall be taken by the arbitrator himself. (emphasis added).

7